UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 21-_____ |
| v. | : | |
| ROBERTO ADAMS, | : | 18 U.S.C. § 1344 (Bank Fraud) |
| Defendant. | : | FORFEITURE ALLEGATION: |
| | : | 18 U.S.C. § 982(a)(2); and<br>21 U.S.C. § 853(p) |

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. Defendant **ROBERTO ADAMS** was a resident of Hyattsville, Maryland and was employed as a Police Officer by the District of Columbia Metropolitan Police Department.

2. SUPERKLEAN LLC, was a Maryland Limited Liability Corporation formed by **ADAMS** in Maryland on June 12, 2020 and controlled by **ROBERTO ADAMS**.

3. **ROBERTO ADAMS** maintained an account at Bank of America ending in -4188.

4. Cross River Bank, headquartered in Fort Lee, New Jersey, was a bank with deposits that were insured by the FDIC, and was engaged in interstate commerce during the entirety of the investigation, and constituted a "financial institution" within the meaning of 18 U.S.C. § 20.

5. Cross River Bank was a participating lender under the Paycheck Protection Program ("PPP"), as described below.

6. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small

businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

### *The Paycheck Protection Program*

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of billions in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP.

8. To obtain a PPP loan, a qualifying business must have submitted a PPP loan application, which is signed by an authorized representative of the business. The applicant of a PPP loan was required to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant must state, among other things, its: (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must have provided documentation showing their payroll expenses. To qualify for eligibility, businesses that applied for a PPP loan needed to be in operation as of February 15, 2020.

9. A PPP loan application must have been processed by a participating financial institution (the lender). If a PPP loan application was approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the

lender to the SBA in the course of processing the loan.

10. PPP loan proceeds must have been used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

## COUNT ONE
## BANK FRAUD
## (18 U.S.C. § 1344)

11. Paragraphs 1 through 10 are re-alleged and incorporated herein.

12. From in or around July 2020 and August 2020, within the District of Columbia and elsewhere, the defendant

**ROBERTO ADAMS**

did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud a financial institution, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to obtain any of the moneys and funds owned by, and under the custody and control of, a financial institution, that is Cross River Bank, by means of materially false and fraudulent pretenses, representations, and promises, relating to a material fact, in violation of Title 18, United States Code, Sections 1344(1) and (2), and 2.

## PURPOSE OF THE SCHEME AND ARTIFICE

13. It was the purpose of the scheme and artifice was for **ROBERTO ADAMS** to unjustly enrich himself by causing the filing of a materially false application and request for PPP funds, to which he was not entitled to receive, totaling over $18,345, and to spend the misappropriated money for his own benefit and enjoyment.

3

## THE SCHEME AND ARTIFICE

14. From in or around July 2020 and August 2020, in the District of Columbia and elsewhere, **ROBERTO ADAMS** devised and intended to devise a scheme and artifice to defraud a financial institution, that is Cross River Bank, and to obtain money and property owned by, and under the custody and control of, a financial institution by means of false and fraudulent pretenses, representations, and promises.

15. **ROBERTO ADAMS** caused the submission of a false and fraudulent application for a loan, through the PPP, for SUPERKLEAN LLC.

16. In support of that application, **ROBERTO ADAMS** caused to be made the false and fraudulent claim, that he was an eligible self-employed individual with a monthly payroll of $7,338 and sought a forgivable loan of $18,345 to cover payroll expenses.

17. In support of that application, **ROBERTO ADAMS** caused the false and fraudulent certification that SUPERKLEAN LLC was in operation on February 15, 2020, and "had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC." He also certified that all "SBA loan proceeds" would be "used only for business-related purposes as specified in the loan application."

18. In support of that application, **ROBERTO ADAMS** caused the submission of bank statements from his personal savings and checking accounts with Bank of America.

19. In support of that application, **ROBERTO ADAMS** caused the submission of a false and fraudulent 2019 Form 1040 Schedule C, which was never filed with the Internal Revenue Service, reporting $94,250 in gross income, $4,120 in expenses, and $88,060 in profits from a business called SUPERKLEAN (which calculates to net profits of $7,338 per month). The Schedule C form indicated that **ROBERTO ADAMS** was the sole proprietor and that the business provided janitorial services. **ROBERTO ADAMS** listed a business address in Hyattsville,

Maryland which was also his personal residence.

20.     **ROBERTO ADAMS**, upon approval of his application, caused Cross River Bank, a FDIC-insured financial institution, to electronically transfer $18,345 in loan proceeds into **ROBERTO ADAMS**'s Bank of America account ending in -4188.

### EXECUTION OF THE SCHEME AND ARTIFICE

21.     On or about July 31, 2020, **ROBERTO ADAMS** did execute, and cause the execution of, the aforesaid scheme and artifice to defraud, to wit: submitting a false and fraudulent PPP loan application to Cross River Bank, for the purpose of inducing it to approve the loan application and pay proceeds to a bank account maintained and controlled by **ROBERTO ADAMS**.

All in violation of Title 18, United States Code, Sections 1344(1) and (2), and 2.

### FORFEITURE ALLEGATION

1.      Upon conviction of the offense alleged in this Indictment, the defendant shall forfeit to the United States any property, constituting or derived from, proceeds the defendant obtained directly or indirectly, as the result of this violation, pursuant to Title 18, United States Code, Section 982(a)(2)(A). The United States will also seek a forfeiture money judgment against the defendant in the amount of $18,345.

2.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant so convicted:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the Court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property that cannot be divided without

difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

(**Criminal Forfeiture,** pursuant to Title 18, United States Code, Section 982(a)(2)(A), and Title 21, United States Code, Section 853(p))

A TRUE BILL:


FOREPERSON.


*Channing D. Phillips/jph*
Attorney of the United States in
and for the District of Columbia.